IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ZACHERY L. RANDOLPH, AMY L. RANDOLPH,

        Plaintiffs,

    vs.

BOLTTECHS MANNING, INC., TAURUS INDUSTRIAL GROUP, LLC,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 25-1399-MPK
Magistrate Judge Maureen P. Kelly

Re: ECF No. 4

**MEMORANDUM OPINION**

**KELLY, Magistrate Judge**

Plaintiffs Zachery L. Randolph and Amy L. Randolph ("Plaintiffs") initiated this action against Defendants Bolttech Mannings, Inc. ("Bolttech Mannings") and Taurus Industrial Group, LLC ("Taurus") (collectively, "Defendants")[1], in the Court of Common Pleas of Allegheny County, alleging state law claims arising out of Mr. Randolph's prior employment with Bolttech Mannings. ECF No. 1-1. In the five count Complaint, they allege breach of contract, wrongful termination, promissory estoppel/detrimental reliance, intentional infliction of emotional distress, and fraud. Id. Defendants timely filed a Notice of Removal on the grounds of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). ECF No. 1.

---

[1]    Defendants have explained that Defendant, Bolttech Mannings, Inc., is a former Pennsylvania corporation which converted to "Bolttech Mannings LLC," a Delaware limited liability company in or around 2022. In December 2022, Defendant, Taurus Industrial Group, LLC, purchased Bolttech Mannings LLC. On or around August 30, 2024, Bolttech Mannings LLC, merged into Defendant, Taurus Industrial Group, LLC, a Delaware limited liability company. ECF No. 4-1 at 2-3, n. 2.

1

Presently before the Court is a Motion to Dismiss filed on behalf of Defendants.  ECF No. 4.  For the reasons that follow, the Motion to Dismiss will be granted in part and denied in part.[2]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Mr. Randolph is a former employee of Defendant Bolttech Mannings, Inc. ECF No.  1-1 ¶ 10. He began working at Bolttech Mannings in October 2018 as a Machine Operator and eventually was promoted to Lead Machine Operator. Id. ¶¶ 10, 14.  Bolttech Mannings previously operated a business in Versailles, Pennsylvania. Id. ¶ 11. Mr. Randolph was hired at a rate of $14.00 per hour with the promise of bonuses and raises throughout his employment if he performed satisfactorily at his position.  Id. ¶ 13.  His offer letter is attached to the Complaint as Exhibit A. ECF No. 1-1 at 20.  It states:

> [Y]ou should be aware that your employment with the Company is for no specific period and constitutes at-will employment.  As a result, you are free to resign at any time, for any reason or for no reason.  The Company retains similar rights and is free to conclude its employment relationship with you at any time with or without cause, and with or without notice.

Id.

During his employment, Mr. Randolph trained between ten to eleven employees. Id. ¶ 14. Over the course of his employment the received several raises due to his excellent performance as an employee and he could run every machine fluently. Id. ¶ 15.  He had impeccable attendance records and was a dedicated employee, even during COVID when employees were attending work with COVID symptoms. Id. ¶ 16. On the day of an OSHA inspection, he impressed an auditor to the point that when the auditor returned on her next visit, when Mr. Randolph was absent and a

---

[2]    Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed.  ECF Nos. 9 and 10.

negative performance evaluation was issued on that inspection, supervisors requested that he "never take off for an inspections again" Id. ¶ 17.

Over the course of his employment, there were discussions about sending Mr. Randolph to school to obtain an education on more advanced machines. Id. ¶ 18. On or around September 1, 2022, he signed an apprenticeship agreement with Bolttech Mannings ("the Apprenticeship Agreement"). Id. ¶ 19. The Apprenticeship Agreement is attached as Exhibit B to the Complaint. ECF No. 1-1 at 21. It provided that in exchange for Mr. Randolph's continued secured employment with Bolttech Mannings, the company would enroll him in the Registered Machinist Apprenticeship Program at New Century Careers so that he would ultimately receive a "Journey Worker Certificate" and Bolttech Mannings would cover all associated costs. Id. ¶ 20. The Apprenticeship Agreement was to remain in force until September 1, 2028. Id. ¶ 21. Under the Apprenticeship Agreement, Mr. Randolph would receive the same hourly wage while an apprentice, with the opportunity to have increases in salary, a bonus, added benefits, and company incentives. Id. ¶ 22. He alleges "the only c[]ause for termination of the agreement" is if he was terminated for cause, and that no other survival or termination clauses were listed in the Apprenticeship Agreement. Id. ¶¶ 23, 24. The Apprenticeship Agreement states:

> In exchange for your agreement to work as a machinist at BMI and to seek to remain at the Company for 2 years after your completion of the machinist apprenticeship program, BMI agrees to pay for all tuition and books for that program for up to 4 years.
>
> BMI and you understand the standard program duration is 4 years, although [a] machinist can test out of up to two years of the program.
>
> The Employee will continue to work for the Company as its Machinist while enrolled in the apprenticeship program, and this Agreement will remain in force from September 1, 2022, until September 1, 2028. The Employee will be entitled to receive the same hourly salary of nineteen dollars ($19.00) while an apprentice and will have the opportunity to get salary increases and/or bonuses as well as

3

added benefits and company incentives based on the sole discretion of management during the term of this Agreement.

Should you be terminated for cause from the Company during the program, you will be responsible for BMI's investment in the program, and you also will be responsible for any added costs incurred by BMI due to the unsatisfactory performance in the program resulting in the need for extra time and expense.

ECF No. 1-1 at 21. Mr. Randolph excelled at his first and only semester at New Century Careers and has attached a copy of his grades, dated May 9, 2023, to the Complaint. ECF No. 1-1 ¶ 26; ECF No. 1-1 at 22.

In December 2022, Taurus Industrial Group, LLC acquired Bolttech Mannings, in order to expand their production. Id. ¶ 28. Defendants terminated Mr. Randolph's employment on June 15, 2023, citing the recent purchase by Taurus and noting "several positions were being eliminated," stating it was not a reflection of his work ethic or capabilities. Id. ¶ 29. The termination letter is attached to the Complaint. ECF No. 1-1 at 23-24.

After Mr. Randolph's termination, Defendants retained an employee that Mr. Randolph had trained and another employee that was given the same apprenticeship opportunity. Id. ¶ 30. Prior to his termination, Mr. Randolph confided in his supervisor that his wife, Plaintiff Amy Randolph, had just lost her job and he was the sole income source for the family. Id. ¶ 31.

Since his termination, Mr. Randolph has attempted to find employment elsewhere and has been told that that he cannot be hired at a level with equal compensation due to his "lack of education" in the exact position that he held with Defendants. Id. ¶ 33. He attempted to complete his program with New Century Careers but was told by a high ranking official there, Neil Ashbaugh, that Bolttech Mannings had "done a huge disservice to [him] because the program he was entered into could only be continued by him if he found an affiliate company that would hire him at entry level, a severe reduction in pay, and he would have to start the program over again." Id. ¶ 37.

4

Mr. Randolph has had difficulty finding employment in part because he is in a "gray area" wherein his lack of education on the machines was combined with his numerous years of experience running machines that required further education. Id. ¶ 37. Mr. Randolph has remained unemployed since his termination from Bolttech Mannings and Plaintiffs allege that his termination caused a "significant and detrimental impact on his financial and emotional well-being." Id. ¶ 39.

On April 9, 2025, Plaintiffs initiated this action by filing a Writ of Summons in the Court of Common Pleas of Allegheny County, and subsequently filed their Complaint on August 25, 2025. ECF No. 1 at 1. Defendants filed the Notice of Removal in accordance with 28 U.S.C. § 1446(b) in this Court on September 12, 2025, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). ECF No. 1 at 2.[3]

On September 17, 2025, Defendants filed a Motion to Dismiss for Failure to State a Claim with Memorandum of Law in Support. ECF Nos. 4, 4-1. Plaintiffs filed an Opposition to Defendants' Motion to Dismiss on October 10, 2025. ECF No. 6. Defendants filed their Reply Brief on October 22, 2025. ECF No. 7.

The Motion to Dismiss is now ripe for consideration.

## II.    STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept

---

[3]    Plaintiffs do not challenge diversity jurisdiction, and the Court finds it has jurisdiction over this matter. Both Defendants are limited liability companies in the state of Delaware; Plaintiffs are residents and citizens of the Commonwealth of Pennsylvania. ECF No. 1-1 ¶ 1; ECF No. 1-3 ¶¶ 5-11. The amount in controversy exceeds the $75,000 threshold. ECF No. 1 ¶ 29, ECF No. 1-1 at 14-15.

bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

Here, Plaintiffs are proceeding *pro se*. While pleadings filed by *pro se* plaintiffs are to be liberally construed and are held to a less stringent standard than those filed by attorneys, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Haines v. Kerner, 404 U.S. 519, 520 (1972); Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

As noted supra, Plaintiffs have attached several documents to their Complaint. A district court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.

1993)). District courts generally may not consider matters extraneous to the pleadings in deciding a motion to dismiss without converting the motion into a one for summary judgment. <u>Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania</u>, 877 F.3d 487, 493 (3d Cir. 2017) (citing <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997)). However, there is an exception to the general rule for a document "integral to or explicitly relied upon" in the operative complaint. <u>Id</u>.

## III.    DISCUSSION

### A. At-Will Employment in Pennsylvania

The parties disagree whether Mr. Randolph's employment remained at-will throughout his employment, as presumed under Pennsylvania law and as stated in his offer letter, despite the terms of the Apprenticeship Agreement.  This could be dispositive of the stated claims for breach of contract, wrongful termination, and promissory estoppel.[4]

Under Pennsylvania law, employment is presumed to be at-will unless it is shown that the parties contracted to restrict the right to terminate employment. <u>Deal v. Children's Hosp. of Philadelphia</u>, 223 A.3d 705, 711 (Pa. Super. 2019) (citing <u>McLaughlin v. Gastrointestinal Specialists, Inc.</u>, 750 A.2d 283, 286-87 (Pa. 2000); <u>Krolczyk v. Goddard Systems, Inc.</u>, 164 A.3d 521, 527 (Pa. Super. 2017)). An at-will employment relationship may be terminated by either the employer or the employee at any time, for any reason, or for no reason. <u>Krolczyk</u>, 164 A.3d at 527. However, where the plaintiff has clearly acknowledged the at-will nature of his employment, the

---

[4]    See <u>Rapagnani v. Judas Co.</u>, 736 A.2d 666, 669 (Pa. Super. 1999) ("As a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship.") (citation omitted); <u>McLaughlin.</u>, 750 A.2d at 287 (as a general rule, an at-will employee has no common law cause of action for wrongful discharge against her employer); <u>Yellovich v. Ahold USA</u>, No. 14-4665, 2014 WL 6676494, at *5 (E.D. Pa. Nov. 24, 2014) ("an employee may not invoke promissory estoppel against an employer for termination of an at-will employment relationship) (citing <u>Paul v. Lankenau Hosp.</u>, 569 A.2d 346, 348 (Pa. Super. 1990).

presumption must prevail. See also Walden v. Saint Gobain Corp., 323 F.Supp.2d 637, 646-47 (E.D. Pa. 2004) (applying Pennsylvania law).

To rebut the presumption of at-will employment, a plaintiff "must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." Luteran v. Loral Fairchild Corp., 688 A.2d 211, 214 (Pa. Super. 1997); see also Rutherford v. Presbyterian–Univ. Hospital, 612 A.2d 500, 503 (Pa. Super. 1992) (the burden of proving one is not employed at-will "rests squarely" with the employee.)

## B. Count I:   Breach of Contract

Defendants' sole basis for seeking dismissal of Count I is that Mr. Randolph was an at-will employee.  ECF No. 4-1 at 5-6. Nonetheless, the Court notes that a breach of contract claim in Pennsylvania requires "(1) the existence of a contract, including its essential terms, (2) a breach of the contract[,] and, (3) resultant damages." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016).  Plaintiffs aver the Apprenticeship Agreement contained definite terms, Defendants failed to uphold those terms, and that he suffered lost wages as a result.  ECF No. 1-1 ¶¶ 41, 42; Id. at 12.

Looking at the Apprenticeship Agreement in and of itself, Mr. Randolph, who was a party to the contract, has stated a claim, while Mrs. Randolph has not. Defendants have argued that broadly, all of Mrs. Randolph's claims should be dismissed on the grounds that she has not alleged any facts in support of her claims.  ECF No. 4-1 at 4-5.

Upon review, the Court will dismiss Mrs. Randolph's breach of contract claim with prejudice because she did not enter into a contract with Defendants. "It is hornbook law that to make out a cause of action for breach of contract, the plaintiff must plead and prove . . .  the

8

existence of a contract to which the plaintiff and defendant were parties." <u>Halstead v. Motorcycle Safety Found., Inc.</u>, 71 F. Supp. 2d 455, 458 (E.D. Pa. 1999).

Given that this case arises in the employment context, the Court concludes that Defendants are partially correct that, as the offer letter itself states, Mr. Randolph was an at-will employee when he was hired on October 8, 2018, up to and including the day the parties entered into the Apprenticeship Agreement on September 1, 2022. ECF No. 1-1 at 20. Pennsylvania has a "firmly entrenched presumption" that employees are "at-will" and can be "discharged for any reason or no reason at all." <u>Rapagnani v. Judas Co.</u>, 736 A.2d at 669. Plaintiff does not dispute this. ECF No. 6 at 6. However, Plaintiffs argue that the presumption of at-will employment is overcome by the clear and concise terms of the Apprenticeship Agreement. <u>Id</u>. Defendants agreed on September 1, 2022 to employ Mr. Randolph until September 1, 2028 at a rate of $19.00 per hour in exchange for his participation in the apprenticeship program classes. <u>Id</u>.

The Court finds that Plaintiffs have sufficiently alleged facts and rebutted the presumption that Mr. Randolph was an at-will employee of Defendant after the parties entered into the Apprenticeship Agreement.[5] As alleged, Defendants agreed to employ Mr. Randolph for a definite duration, specifically, for a term up to two years following his completion of the apprenticeship program classes, specifying that the agreement "will remain in force from September 1, 2022, until September 1, 2028." ECF No. 1-1 at 21. "The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." <u>Walton v. Philadelphia Nat. Bank</u>, 545 A.2d 1383, 1388 (Pa. Super. 1988). At this juncture, having alleged enough facts to plausibly

---

[5]    Plaintiffs also argue in the alternative that the parties entered into an implied contract, contending Defendants promised Mr. Randolph "program completion and reimbursement in exchange for his performance, creating an implied contract with specific terms and expectations of continued employment during his apprenticeship." ECF No. 6 at 7. If Mr. Randolph wishes to pursue this cause of action, he must do so by setting forth a separate count in the complaint and support the implied contract claim with sufficient facts.

rebut the presumption of at-will employment sufficient to support a breach of contract claim, the breach of contract claim should proceed to discovery and the parties should be afforded an opportunity to develop a record on this issue. Mr. Randolph has sufficiently alleged Defendants breached the Apprenticeship Agreement at this initial stage of the case.

Having rejected Defendants' argument, the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied as to Count I with respect to Plaintiff Zachary L. Randolph and granted with respect to Plaintiff Amy L. Randolph.

### C.  Count II:    Wrongful Termination

Defendants moves to dismiss Count II on two grounds.  First, Defendants seek dismissal on the grounds that a cause of action for wrongful termination is unavailable to at-will employees, and second, the cause of action is barred by the gist of the action doctrine.

Indeed, should Mr. Randolph[6] be found to be a contracted employee, as opposed to an at-will employee, the wrongful discharge claim cannot lie. Sweda v. Upper Bucks Cnty. Tech. Sch., No. CV 22-1787, 2025 WL 1568224, at *11 (E.D. Pa. June 3, 2025), reconsideration denied, No. CV 22-1787, 2025 WL 4632827 (E.D. Pa. July 22, 2025) "[T]he Pennsylvania common law wrongful discharge cause of action that is available to a Pennsylvania at-will employee does not extend to a contractual employee." Raczkowski v. Empire Kosher Poultry, Inc., No. CIV.A. 1:04-CV-312, 2005 WL 1273591, at *2 (M.D. Pa. May 27, 2005), aff'd sub nom. Raczkowski v. Empire Kosher Poultry, 185 F. App'x 117 (3d Cir. 2006) (citing Harper v. American Red Cross Blood Servs., 153 F.Supp.2d 719, 721 (E.D. Pa. 2001); Phillips v. Babcock & Wilcox, 503 A.2d 36, 36-38 (Pa. Super. 1986)).

---

[6]    The Court notes that there is no allegation, nor could there be, that Mrs. Randolph was an employee of the Defendants, and accordingly, Count II will be dismissed with prejudice as to her.

The Court notes that there is a limited common law cause of action for wrongful discharge where an at-will termination violates a clear mandate of public policy. Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998). Consequently, "[a]n employee may bring a cause of action for a termination of that relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy." Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009). Here, Plaintiffs do not allege that there was a violation of Pennsylvania public policy.

Having found that the question of Mr. Randolph's status as an at-will employee is undecided at this point, the Motion to Dismiss Count II is denied to the extent Defendants move for dismissal on that ground.

Next, Defendants move to dismiss Count II on the grounds it is barred by the gist of the action doctrine. ECF No. 4-1 at 8-9. Defendants also make this argument with respect to Count V, wherein Plaintiffs assert a claim for fraud. Id. at 13-15. "Under Pennsylvania law, the 'gist of the action' doctrine 'precludes plaintiffs from recasting ordinary breach of contract claims into tort claims.'" Jones v. ABN Amro Mortg. Grp., Inc., 606 F.3d 119, 123 (3d Cir. 2010); see also Guthrie Clinic v. Convergence CT, Inc., No. 4:23-CV-01396, 2024 WL 265868, at *1 (M.D. Pa. Jan. 24, 2024). The gist of the action doctrine applies where "the duty breached is one created by the parties by the terms of their contract— i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract." Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014); see also Creighton Prop. Holdings, LLC v. Lewis Bros., Inc., No. 2:21-CV-279, 2021 WL 4523797, at *2-3 (W.D. Pa. Oct. 4, 2021). The gist of the action doctrine does not apply where the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts. PPG Indus., Inc. v. Generon IGS, Inc., 760 F. Supp. 2d 520, 528 (W.D. Pa. 2011).

11

Parties have a general "precontractual duty not to deceive through misrepresentation" and torts based on such a duty are not barred by the gist of the action doctrine. SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 217 (3d Cir. 2022); see Ozler v. PLA Logistics, Inc., No. 5:24-CV-04926, 2025 WL 376041, at *5 (E.D. Pa. Feb. 3, 2025) (denying a motion to dismiss based on the gist of the action doctrine because the plaintiff's tort claim was based on a precontractual duty not to deceive). However, claims related to misrepresentations regarding duties "enshrined in the contract," such as misrepresentations regarding a parties' intent to perform under the contract, are barred by the gist of the action doctrine because such claims sound in contract law, not tort law. Vives v. Rodriguez, 849 F. Supp. 2d 507, 521-22 (E.D. Pa. 2012); see RRF Bldg., LLC v. Excel Dev. Grp., No. 1:23CV341, 2024 WL 3794664, at *5 (M.D. Pa. Aug. 12, 2024) (distinguishing claims based on "misrepresentations in negotiations leading up to the formation of the contract" which sound in tort law from claims based on misrepresentations regarding contractual duties such as performance which sound in contract law).

"A court should be cautious when determining that a claim should be dismissed under the gist of the action doctrine, due in part to the fact that Fed. R. Civ. P. 8(d)(2) allows parties to plead multiple claims as alternative theories of liability." PPG Indus., Inc., 760 F. Supp. 2d at 528. However, a tort claim should be dismissed where the plaintiff fails to allege any facts suggesting the duty the defendant breached arises out of a general social duty rather than a contract. See Caudill Seed & Warehouse Co. v. Prophet 21, Inc., 123 F. Supp. 2d 826, 834 (E.D. Pa. 2000) (dismissing a claim under the gist of the action doctrine because "plaintiff's fraud claim merely duplicates its breach of contract claim"); see also Creighton Prop. Holdings, LLC, 2021 WL 4523797, at *5 (noting courts are cautious to dismiss claims under the gist of the action doctrine

12

but nonetheless dismissing a negligence claim where the alleged duty arose from the contractual relationship between the parties).

Here, the nuances of Plaintiffs' allegations are such that the Court views them as having been plead in the alternative. Plaintiff alleges that Defendants deliberately did not disclose a material fact, i.e., that the sale of the company to Taurus was forthcoming when it offered him the apprenticeship, but also that Defendants wrongfully induced him to participate in a costly training program and then discharged him in violation of the terms of the contract itself, which refers to termination for cause. Under these circumstances, the Motion to Dismiss on the grounds of the gist of the action is denied as to Counts II and V, wrongful discharge and fraud respectively.

### D. Count III:        Promissory Estoppel – Detrimental Reliance

Defendants move to dismiss Count III, wherein Plaintiffs bring a claim for promissory estoppel, arguing, again, that Mr. Randolph was an at-will employee who could be terminated at any time. Pennsylvania courts have held that a plaintiff has proven promissory estoppel if they establish that: "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promise; (2) the promise actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000).

"[A]n employee may not invoke promissory estoppel against an employer for termination of an at-will employment relationship. Yellovich, 2014 WL 6676494 at *5 (citing Paul, 90 A.2d at 348); see also Dyche v. Bonney, 277 F. App'x. 244, 246 n.1 (3d Cir. 2008) ("[U]nder the Pennsylvania Supreme Court's decision in Paul, [plaintiff's] promissory estoppel theory is not a legally cognizable cause of action in Pennsylvania.") Thus, in the event Plaintiff is ultimately found to be an at-will employee, this claim may be dismissed as a matter of law. However, the

13

nature of Mr. Randolph's employment relationship is not settled at this initial stage of the litigation. Therefore, the Court cannot say at this time whether the claim for promissory estoppel is subject to dismissal on this basis.

Accordingly, the Defendants' Motion to Dismiss Count III is denied.

### E. Count IV:     Intentional Infliction of Emotional Distress

Defendants move to dismiss the claim for intentional infliction of emotional distress on the grounds Plaintiffs have failed to state a claim, noting the termination of employment is rarely so outrageous under the caselaw as to constitute a cause of action. In order to state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must show that: "(1) the conduct [of the defendant was] extreme and outrageous; (2) it [was] intentional or reckless; (3) it . . . caused emotional distress; [and] (4) that distress [was] severe." Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. 1997). A claim for intentional infliction of emotional distress also requires "an allegation of some type of physical injury, harm, or illness related to the distress." McCullough v. Wellspan York Hosp., No. 1:20-cv-979, 2021 WL 711476, at *4 (M.D. Pa. Feb. 5, 2021) (citing Robinson v. Family Dollar, Inc., No. 14-3189, 2015 WL 3400836 (E.D. Pa. May 27, 2015)), report and recommendation adopted at 2021 WL 694800 (Feb. 23, 2021). The Restatement (Second) of Torts, which has been adopted in Pennsylvania, instructs that:

> It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

Restatement (Second) of Torts § 46, cmt. d; Hoy, 720 A.2d at 754. Rather, Pennsylvania courts have required plaintiffs to demonstrate that the defendant's conduct was "'so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable

14

to civilized society.'" <u>Regan v. Twp. of Lower Merion</u>, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999) (quoting <u>Mulgrew v. Sears Roebuck & Co.</u>, 868 F. Supp. 98, 103 (E.D. Pa. 1994)).

Because this standard is so high, the Pennsylvania Supreme Court has noted that "'it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.'" <u>Hoy</u>, 720 A.2d at 754 (quoting <u>Cox v. Keystone Carbon</u>, 861 F.2d 390, 395 (3d Cir. 1988)). Indeed, "[t]he only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." <u>Id.</u> (quoting <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1487 (3d Cir. 1990)).

"In the context of a dismissal [from employment], it has been noted that 'while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event' and cannot provide a basis for recovery for intentional infliction of emotional distress." <u>Cox</u>, 861 F.2d at 395 (quoting <u>Brieck v. Harbison-Walker Refractories</u>, 624 F. Supp. 363, 367 (W.D. Pa. 1985), <u>aff'd in relevant part</u>, 822 F.2d 52 (3d Cir. 1987)). Indeed, court have held that "termination from a job is a legally insufficient basis for an intentional infliction of emotional distress claim." <u>Sabo v. UPMC Altoona</u>, 386 F. Supp. 3d 530, 557 (W.D. Pa. 2019).

Given this caselaw, and the facts as alleged, the Court agrees that Plaintiff has failed to state a claim. Mr. Randolph[7] alleges he "suffered serious emotional distress due to lack of ability to support is family, inability to obtain a lasting satisfying career, and facing the humility of rejection for jobs he should be qualified for and having to seek a position that is lesser than his

---

[7]    Count IV does not mention any emotional distress on the part of Mrs. Randolph.  ECF No. 1-1 ¶¶ 55-56.

experience." ECF No. 1-1 at ¶ 56. This is not so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society.

Accordingly, Count IV is dismissed for failure to state a claim.

## F. Count V:    Fraud

Defendants move to dismiss Count V, which alleges common law fraud, for failure to state a claim. According to Plaintiffs, Defendants did not tell the truth when they stated the reason for Mr. Randolph's termination was due to a reduction in force, because "Defendant Bolttech did not cease to operate business or file for bankruptcy . . . and had an estimated yearly annual revenue of 65.2 Million Dollars for the 2024 calendar year." ECF No. 1-1 ¶ 58.  In addition, Plaintiffs allege Defendants mislead Mr. Randolph into entering the Apprenticeship Agreement in September of 2022 when they knew that the sale of Bolttech Mannings to Taurus was impending in December of 2022. Id. ¶ 59.

Defendants argue that Plaintiffs have failed to plead fraud with particularity as required by Fed. R. Civ P. 9(b), and have failed allege that this was material or caused a resulting injury. ECF No. 4-1 at 15-16. To prove a claim for fraudulent misrepresentation, a plaintiff must show: "a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Yellovich, 2014 WL 6676494 at *3-4 (citing Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994)).

The Court agrees that Plaintiffs have failed to state a claim under the Twombly and Iqbal standard, and instead they summarily allege that the Defendants' conduct constitutes fraudulent misrepresentation. Plaintiffs have failed to plead sufficient factual content to allow the court to

draw a reasonable inference that Defendants are liable for fraud, particularly that Defendants acted with the intent to mislead Mr. Randolph into relying on their misrepresentation.

Accordingly, the Motion to Dismiss is granted with respect to Count V and the fraud claim is dismissed.

### G. Motion to Dismiss Party Amy L. Randolph

Defendants move to dismiss all claims as to Plaintiff Amy L. Randolph on the grounds she has failed to state a claim, noting she is mentioned twice in the body of the complaint. ECF No. 4-1 at 4, citing ECF No. 1-1 at ¶ 1 (stating the Plaintiffs are married) and ¶ 36 (she contacted new Century Careers to request information about Mr. Randolph continuing the apprenticeship program). In response, Plaintiffs explain that Mrs. Randolph suffered loss of household income and detrimentally relied on the promise of future employment by expending money, as well as averring other factual matters that are not stated in the Complaint itself. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) (internal quotation and citation omitted); see Carpenters Health 86 Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys., 837 F.3d 378, 383 (3d Cir. 2016) (party may not amend complaint in brief opposing a motion to dismiss). Any additional factual content found in the Opposition to the Defendants' Motion to Dismiss, ECF No. 6, has been disregarded by the Court.

As mentioned earlier, the Court agrees that Mrs. Randolph has not stated a cognizable claim under the law for breach of contract or wrongful termination because she clearly did not enter into a contract with Defendants and was not their employee. Thus, the Motion to Dismiss will be granted and Counts I and II will be dismissed with prejudice. As to the remaining Counts, Mrs. Randolph will be afforded an opportunity to amend the Complaint, should she so choose, to

17

attempt to correct any deficiencies. Although, Mrs. Randolph has a substantial uphill climb to make out any claim against Defendants. Federal Rule of Civil Procedure 15(a)(2) requires district courts to "freely give leave [to amend] when justice so requires." Premier Comp Sols., LLC v. UPMC, 970 F.3d 316, 318 (3d Cir. 2020). This is a "liberal standard." Id. at 319. Given this liberal standard, the Court will grant leave to amend as set forth herein.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 4, is properly granted in part and denied in part. Accordingly, the following Order is entered.

### ORDER

AND NOW, this 18th day of June, 2026, upon consideration of the pending motion and briefs in support of the parties' various positions, it is hereby ORDERED that Defendant Bolttechs Manning, Inc. and Taurus Industrial Group, LLC's Motion to Dismiss, ECF No. 4, is hereby GRANTED IN PART and DENIED IN PART as follows.

1) It is GRANTED as to the breach of contract claim at Count I brought by Plaintiff Amy L. Randolph and said claim is DISMISSED WITH PREJUDICE as to her. It is DENIED as to Plaintiff Zachary L. Randolph.

2) It is GRANTED as to the wrongful termination claim at Count II brought by Plaintiff Amy L. Randolph and said claim is DISMISSED WITH PREJUDICE as to her. It is DENIED as to Plaintiff Zachary L. Randolph.

3) It is DENIED as to the claim for promissory estoppel/detrimental reliance at Count III.

4) It is GRANTED as to the intentional infliction of emotional distress claim at Count IV is DISMISSED WITHOUT PREJUDICE.

5) It is GRANTED as to the fraud claim at Count V and said claim is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED THAT should Plaintiffs wish to file an Amended Complaint, they must do so within 30 days of the entry of this Order. Plaintiffs may not include any of claims that have been dismissed with prejudice.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order, he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:    All counsel of record by Notice of Electronic Filing

Zachery L. Randolph
1404 Washington Blvd.
McKeesport, PA 15133

Amy L. Randolph
1404 Washington Blvd.
McKeesport, Pa 15133

19